# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLAUDIA S. WEISS,            :
     Plaintiff,            :
                            :
v.                           :    Civil No. 3:04cv1831 (JBA)
                             :
MARTIN T. WEISS,             :
     Defendant.            :

## RULING ON DEFENDANT'S
## MOTION TO DISMISS [DOC. # 10]

Plaintiff brings a four-count complaint against her former husband and law partner, alleging breach of contract, breach of fiduciary duty, fraud, and conversion, arising out of defendant's alleged noncompliance with certain terms of their marital dissolution agreement.  <u>See</u> Second Am. Compl. [doc. # 18] ¶¶ 28-42.  Plaintiff, currently a resident of Massachusetts, invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendant now moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1).  For the reasons that follow, defendant's motion to dismiss [Doc. # 10] will be granted.

## I.   Factual Background

Plaintiff and defendant were married in 1987 in Woodstock, Connecticut and practiced together as law partners in Danielson, Connecticut from December 1988 to December 1999.  Second Am. Compl. ¶ 2; <u>Weiss v. Weiss</u>, No. FA 99-0071672S, slip op. at 3 (Conn. Super. Ct. Jan. 3, 2003) (Scholl, J.), attached to Aff. of

1

Martin Weiss [Doc. # 12] as Ex. B.  The plaintiff practiced
family law and the defendant handled criminal, personal injury
and worker's compensation cases.  Second Am. Compl. ¶¶ 4-6; Weiss
v. Weiss, slip op. at 4.  Their law practice was extremely
successful, and the parties "amassed significant assets,
including a house in Nantucket, a house valued at $545,000 in
Woodstock, Connecticut, as well as horses and airplanes" and
several cars.  Weiss v. Weiss, slip op. at 4.

　　"After several years of strife and infidelity on the part of
both parties, the beginning of the end of this marriage occurred
on October 29, 1999 when the parties fought in their home." Id.
at 10.  After another incident the next day, the parties agreed
to divorce, and the plaintiff volunteered to draft the papers.
Id.  "The Plaintiff was the most likely person to draft the
dissolution papers, if the parties were to represent themselves,
because her law practice was limited to divorce work.  She is
known as, and considers herself, one of the top matrimonial
lawyers in Windham county.  She has drafted hundreds of
matrimonial agreements." Id. at 11.

　　The parties signed the marital dissolution agreement on
November 20, 1999, and the plaintiff filed for divorce the next
day.  After lengthy litigation, including an order of alimony
pendente lite and a nine-day trial involving 73 exhibits and 22
witnesses, the Connecticut Superior Court entered an order that,

among other things: dissolved the marriage on the grounds of irretrievable breakdown; found that the marital dissolution agreement was fair and equitable and incorporated it by reference in the judgment; ordered the plaintiff to pay half the defendant's attorneys' fees because she "sought to undermine" the separation agreement, "which has resulted in this lengthy litigation"; ordered the defendant to pay the plaintiff the remainder due to her for her share of the Woodstock house; ordered the defendant to pay any sums still owing on his obligation to give the plaintiff one-third of all contingency fees generated from personal injury cases active at Weiss & Weiss as of November 1, 1999, as required by Paragraph 9 of the dissolution agreement; and ordered the defendant to provide an accounting as to how the payment of personal injury fees was calculated. Id. at 27, 29.  The order further instructed that a "signed copy of the Marital Dissolution Agreement dated November 30, 1999 shall be attached to the judgment file."  Id. at 29-30.

As relevant to the present lawsuit, Paragraph 6 of the separation agreement, entitled "Alimony," also includes a provision that "the husband shall pay monthly stable board up to $650.00 monthly for one horse for a period of one year.  Said alimony shall be non-modifiable ... ."  Marital Dissolution Agreement, Aff. of Martin Weiss, Ex. B, at 33.

Paragraph 9 of the separation agreement reads:

3

BUSINESS PARTNERSHIP AND ACCOUNTS RECEIVABLE.   The husband and wife are partners at the Law Offices of Weiss & Weiss located at 133 School Street, in Danielson, Connecticut.  The wife agrees that she will withdraw as a partner at the Law Offices of Weiss & Weiss as of January 1, 2000, but will remain of counsel without pay excepting the conditions of this paragraph to assist with the conclusion of all pending family law cases ...  The wife shall receive 1/3 of all contingency fees generated from personal injury cases at the Law Offices of Weiss & Weiss active as of November 1, 1999 and 50% of all fees generated from closed dissolution and custody files at the Law Offices of Weiss & Weiss as of November 1, 1999. The parties have also agreed that the wife shall receive a 20% interest in the fee generated from a recent stipulated settlement in the Second District Workers' Compensation Division entitled "COTE VS. TOMASSO CONSTRUCTION".  Other than the aforementioned, the wife therefore, agrees to waive any claim in the business...

Id. at 34-35.

After entry of the Superior Court judgment, this contentious divorce litigation continued unabated.  See Docket Sheet, Weiss v. Weiss, No. FA 99-0071672S, available at www.jud2.state.ct.us/ civil_inquiry (last visited May 25, 2005).  The plaintiff filed a motion to reargue on January 22, 2003, which was denied on February 6, 2003, and the Judgment file was entered May 22, 2003. Id.  On September 12, 2003, the plaintiff filed a motion for contempt alleging that the defendant had failed to pay the plaintiff's stable board of $650 monthly, and also had failed to pay the plaintiff 50% of all fees from closed divorce and custody files at Weiss & Weiss as of November 1, 1999, and 20% of the fee from the Cote v. Tomasso worker's compensation case, as stipulated in the dissolution agreement.  See Pl. Mot. for

4

Contempt Post Judgment, Aff. of Martin Weiss, Ex. C.  The
defendant objected to plaintiff's motion on October 14, 2003, <u>Id.</u>
at Ex. F, and filed a motion for clarification on October 16,
2003, <u>Id.</u> at Ex. D, asserting that the horse board provision was
unclear because the bills submitted by plaintiff were not
itemized and the judgment does not state when the payments were
to start.  The docket sheet does not reflect that rulings were
entered on any of these motions.

On November 3, 2003, however, the defendant filed a further
motion to clarify the stable board provision and to clarify the
definition of a "personal injury case" under the terms of the
dissolution agreement.  This motion for clarification was granted
orally by Judge Scholl on April 20, 2005.  Transcripts provided
by the parties at the request of this Court, <u>see</u> Letter to
Counsel, 6/6/05 [Doc. # 19], reveal that Judge Scholl ruled that:
(1) she had jurisdiction to clarify the terms of a previously-
issued divorce judgment; (2) "personal injury cases" within the
meaning of the separation agreement did not include worker's
compensation cases; and (3) the horse board provision was not
restricted to any particular one-year period and therefore
defendant must pay when presented with receipts.

On May 5, 2005, plaintiff appealed the clarification ruling
to the Connecticut Appellate Court, arguing that Judge Scholl
lacked jurisdiction to interpret the divorce judgment through the

vehicle of a motion to clarify.  Defendant filed a motion to
dismiss the appeal on May 26, 2005, arguing that Judge Scholl's
clarification was not a final judgment and therefore not
appealable.  The motion and appeal remain pending.

Before defendant's motion for clarification, plaintiff filed
the instant action in federal court on October 29, 2004.  Count
One of the plaintiff's Second Amended Complaint, filed February
22, 2005, alleges that defendant breached the provision of the
separation agreement requiring him to pay plaintiff's horse board
and the provision requiring him to pay the plaintiff one-third of
fees collected from personal injury cases.  See Second Am. Compl.
¶ 29.  Count Two of the complaint alleges that the defendant
breached his fiduciary duty to the plaintiff by failing "to
disclose all active contingent fee files of the partnership as of
November 1, 1999."  Second Am. Compl. ¶ 31.  Count Three of the
complaint alleges that the defendant "fraudulently misrepresented
that he would disclose all contingent fee personal injury files
active as of November 1, 1999 to the plaintiff to induce
plaintiff to sign the [separation] agreement" and that he
"concealed and failed to disclose at least ninety (90) contingent
fee cases."  Id. ¶¶ 35-36.  Finally, Count Four alleges
"conversion/theft," in that the defendant has "wrongfully
detained or exercised dominion of" unspecified personal property
or money to which plaintiff alleges she is entitled under the

separation agreement.  Id. ¶ 41.

The defendant now moves to dismiss all claims of the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  He argues that the crux of plaintiff's complaint is a disagreement over the meaning of "personal injury cases" in the Marital Dissolution Agreement--specifically whether worker's compensation cases are personal injury cases--and because the separation agreement was incorporated into the divorce judgment, interpretation of the agreement falls within the domestic relations exception to federal court diversity jurisdiction.  In the alternative, he argues that this Court should abstain from deciding the case because of the ongoing state court proceedings.  In his supplemental brief, defendant further argues that because Judge Scholl recently ruled that the 90 worker's compensation cases are not in fact "personal injury cases," the only remaining outstanding amounts plaintiff can claim she is owed are $7,800 for horse board and $12,000 from an escrow account, so it is not possible for the amount in controversy to exceed $75,000 and therefore diversity jurisdiction is lacking.

## II.  Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may refer to evidence outside the pleadings.  Id.  Evidence concerning the court's jurisdiction "may be presented by affidavit or otherwise."  Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it.").

**III. Discussion**

    **A.   Domestic Relations Exception**

The Supreme Court has long held that the "domestic relations exception ... divests the federal courts of power to issue divorce, alimony, and child custody decrees."  Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).  This principle first was articulated in Barber v. Barber, 21 How. 582, 62 U.S. 582, 584 (1858), where the Supreme Court "disclaim[ed] altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce...."  As the Court subsequently explained in Ankenbrandt, 504 U.S. at 696-99, this jurisdictional limitation is statutory, not

constitutional, in nature.  It rests on the history of the
diversity jurisdiction statute, 28 U.S.C. § 1332, as well as
"sound policy considerations."  Id. at 703.  Issuance of divorce,
alimony, or child custody decrees "not infrequently involves
retention of jurisdiction by the court and deployment of social
workers to monitor compliance.  As a matter of judicial economy,
state courts are more eminently suited to work of this type than
are federal courts..."  Id. at 703-04.

        For this reason, federal courts may not exercise
jurisdiction over contract claims between former spouses arising
out of separation agreements.  For instance, in an action very
similar to the present case, the Sixth Circuit held that the
district court lacked jurisdiction over a plaintiff's breach of
contract action against her former spouse, which was premised on
a separation agreement.  McLaughlin v. Cotner, 193 F.3d 410 (6th
Cir. 1999).  In McLaughlin, an Ohio state court entered a divorce
judgment that incorporated a separation agreement between the
former spouses.  Id. at 411.  Subsequently, the former wife filed
a motion to show cause in state court to hold the defendant in
contempt of court for failure to sell the marital home, as
required by the separation agreement.  Id.  While her motion was
pending, she also filed a federal complaint against her ex-
husband alleging breach of the agreement for sale of the real
estate.  Id.  The district court dismissed the case sua sponte

9

for lack of subject matter jurisdiction, and the Court of Appeals
affirmed, reasoning that the plaintiff was:

> attempting to disguise the true nature of the action by
> claiming that she is merely making a claim for damages
> based on a breach of contract. However, the alleged
> 'contract' is part of a separation agreement that was
> voluntarily entered into by the parties, and the
> separation agreement was incorporated into the divorce
> decree. This case thus involves issues arising out of
> conflict over a divorce decree, and, according to
> Ankenbrandt, comes within the 'domestic relations
> exception.'

Id. at 413.

### 1.   Plaintiff's Breach of Contract Claim

Plaintiff Weiss likewise seeks to enforce her separation
agreement, as incorporated into the divorce judgment, in Count
One of her Second Amended Complaint. This count alleges breach
of contract on the grounds that the defendant failed to pay
plaintiff's horse board and one-third of all contingency fee
personal injury case fees, as required by Paragraphs 6 and 9.

Plaintiff argues that her "Amended Complaint does not ask
the federal court to interpret or modify a state court judgment
of dissolution. The core of this action is the contract which by
its own terms survived the judgment and is independently
enforceable in a court of law." Pl. Mem. in Opp. [Doc. # 14] at
5. This argument is disingenuous and contradicted by the terms
of the agreement itself and Judge Scholl's divorce ruling.

The Marital Dissolution Agreement states that it "shall not
merge with any court decree," but it also states that "the

10

parties shall recommend to the court that this Agreement become part of the court file," and that "modifications of the final decree (Judgment) by a court of competent jurisdiction shall be deemed automatically to modify the terms of this Agreement and neither party thereafter shall seek to interpose or enforce any of the terms of this Agreement which shall differ from the Judgment as modified."  Weiss v. Weiss, slip op. at 31-32.  The Superior Court's ruling on the divorce action found that the agreement was fair and equitable "and it is incorporated by reference in the judgment."  Id. at 29.  This procedure is mandated by Connecticut General Statutes § 46b-66, which provides: "If the court finds the [separation] agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court."

Therefore, contrary to plaintiff's assertions, the agreement at issue is not merely a contract providing for the division of law firm assets.  The arrangements concerning the firm are part of a Marital Dissolution Agreement, not a separate contract.  The parties chose to distribute the firm's assets through the divorce proceedings.  Their agreement concerning the contingent fees was inextricably tied to the remainder of the property settlement, which was specifically incorporated by reference into the divorce judgment pursuant to state law.  "[C]onsequently, the obligations

11

now imposed are not those imposed by the law of contract or torts, as plaintiff contends, but are those imposed by the divorce decree." McLaughlin, 193 F.3d at 414.  Therefore the breach of contract count is subject to the domestic relations exception, and this Court lacks subject matter jurisdiction over the claim.

### 2.   Plaintiff's Tort Claims

Unlike separation agreement-based contract claims, federal courts may exercise subject matter jurisdiction over tort claims between former spouses.  Although Ankenbrandt, 504 U.S. at 703, firmly established a domestic relations exception to federal jurisdiction, that case ultimately held that plaintiff's tort claims were not subject to the exception.  At issue was the plaintiff's claim for damages against her ex-husband and his female companion for abusing the plaintiff's children. Ankenbrandt, 504 U.S. at 704.  The Supreme Court held that the district court had jurisdiction over the claim because it "in no way" sought a "divorce, alimony, or child custody decree," and the female companion was not a party to the previous divorce case.  Id. at 704.

Following this reasoning, the Sixth Circuit in Drewes v. Ilnicki, 863 F.2d 469, 471 (6th Cir. 1988), held that the federal court had jurisdiction over a diversity lawsuit alleging that a former spouse committed intentional infliction of emotional

12

distress by interfering with visitation rights and by interfering with the plaintiff's employment.  The federal case was brought after the state court custody and alimony action had concluded. Similarly, <u>Tilley v. Anixter Inc.</u>, 283 F. Supp. 2d 729, 736-37 (D. Conn. 2003), permitted an intentional infliction claim against a former spouse and his employer, who were alleged to have colluded to mislead the state court concerning the husband's income.  The court reasoned that the employer was not a party to the divorce/custody action, and any damages from tort claim would be separate from relief the family court could award, such as a modification of the child support allowance.[1]  <u>Id.</u>

In the present case, Counts Two, Three and Four of plaintiff's Second Amended Complaint allege claims for breach of fiduciary duty, fraud, and conversion/theft.  Plaintiff alleges that defendant breached his fiduciary duty to her by failing to disclose all active personal injury cases, as required by the Marital Dissolution Agreement.  She further alleges that the defendant committed fraud by misrepresenting that a list provided to her of personal injury cases was complete, and that he

---

[1]Connecticut courts also recognize inter-spousal tort claims as separate from divorce proceedings.  In <u>Delahunty v. Mass. Mutual Life Ins. Co.</u>, 236 Conn. 582, 674 A.2d 1290 (Conn. 1996), the Connecticut Supreme Court held that a fraud claim brought by plaintiff against her former husband, alleging that he forged her signature to wrongfully terminate a life insurance policy during the marriage, was not barred by the doctrine of <u>res judicata</u> because it was separate from and not necessarily litigated in the marital dissolution proceedings.

committed conversion/theft by retaining the personal injury fees
to which plaintiff claims she is entitled.  She claims treble
damages for theft as well as compensatory and punitive damages.
Because plaintiff demands relief on these claims that could not
be awarded in a dissolution proceeding, these claims are not
barred by the domestic relations exception.

However, resolution of the tort claims turns on an
interpretation of the separation agreement.  Plaintiff may not
succeed on her tort claims if she was not actually entitled under
the agreement to disclosure of, or fees from, the disputed
worker's compensation cases.  In other words, if plaintiff had no
contractual entitlement, defendant committed no fraud, breach of
fiduciary duty, or theft.

On April 20, 2005 Judge Scholl of the Connecticut Superior
Court issued a ruling clarifying that the separation agreement,
as incorporated in the divorce judgment, did not entitle
plaintiff to the requested fees because worker's compensation
cases are not "personal injury cases."  Plaintiff's appeal of
that ruling currently is pending in the Connecticut Appellate
Court.  As discussed below, because this issue was decided by the
state court, it is proper for this Court to abstain from
revisiting the issue via plaintiff's tort claims.

**B.    Rooker-Feldman Doctrine**

The Rooker-Feldman abstention doctrine holds that "federal

14

district courts do not have jurisdiction over claims that have
already been decided, or that are 'inextricably intertwined' with
issues that have already been decided, by a state court."
Mitchell v. Fishbein, 377 F.3d 157, 165 (2d Cir. 2004) (quoting
Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27, 29 (2d
Cir. 2003) (per curiam)).  See generally District of Columbia
Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v.
Fidelity Trust Co., 263 U.S. 413, 416 (1923).  Thus, the
"Rooker-Feldman doctrine provides that the lower federal courts
lack subject matter jurisdiction over a case if the exercise of
jurisdiction over that case would result in the reversal or
modification of a state court judgment."  Hachamovitch v.
DeBuono, 159 F.3d 687, 693 (2d Cir. 1998).  The doctrine "holds
that, among federal courts, only the Supreme Court has subject
matter jurisdiction to review state court judgments."  Johnson v.
Smithsonian Inst., 189 F.3d 180, 185 (2d Cir. 1999) (citations
omitted).

Additionally, the doctrine "bars federal courts from
considering claims that are inextricably intertwined with a prior
state court determination."  Id. at 185 (citations and internal
quotation marks omitted).  In the Rooker-Feldman doctrine, "the
Supreme Court's use of 'inextricably intertwined' means, at a
minimum, that where a federal plaintiff had an opportunity to
litigate a claim in a state proceeding (as either the plaintiff

15

or defendant in that proceeding), subsequent litigation of the
claim will be barred under the Rooker-Feldman doctrine if it
would be barred under the principles of preclusion." Moccio v.
N.Y. State Office of Court Admin., 95 F.3d 195, 199-200 (2d Cir.
1996).  Stated another way, a federal claim is "inextricably
intertwined" with the state-court judgment if the relief sought
may be granted only on the federal court's finding that the state
court determined the issues before it erroneously. Pennzoil Co.
v. Texaco Inc., 481 U.S. 1, 25 (1987) (plurality op.); Ashton v.
Cafero, 920 F. Supp. 35, 37 (D. Conn. 1996).

"Rooker-Feldman applies not only to decisions of the highest
state courts, but also to decisions of lower state courts."
Ashton, 920 F. Supp. at 37 (citing  Port Auth. Police Benevolent
Assoc. Inc. v. Port Auth. of N.Y. & N.J. Police Dept., 973 F.2d
169, 177 (3d Cir. 1992)).  It applies to "challenges to final and
interlocutory state court decisions." Id. (emphasis added).

In the present case, a decision by this Court on the merits
of plaintiff's tort claims necessarily would require a review of
the correctness of the state court's interpretation of the
Weisses' Marital Dissolution Agreement.  In essence, this Court
would be sitting as a state appellate court to review Judge
Scholl's clarification ruling, which held that worker's
compensation cases are different from personal injury cases under
the terms of the Agreement.  Only if this Court found Judge

16

Scholl's ruling erroneous could it grant relief to plaintiff on her tort claims.  This type of relitigation of an issue already decided by a state court is precisely what is barred by the Rooker-Feldman doctrine.

Plaintiff argues that because defendant filed the Motion for Clarification in the Superior Court, this Court should disregard the state litigation on these issues.  Her argument misses the mark.  The issue under Rooker-Feldman abstention is whether the state court has, in fact, decided the issue, not who raised the issue.

In short, it is obvious that plaintiff is asking this Court to revisit issues already decided against her in the Superior Court.  Because the tort claims asserted in plaintiff's federal complaint are inextricably intertwined with the state court's ruling interpreting the separation agreement, and a ruling in plaintiff's favor would require reversal or modification of the state court's decision, this Court must abstain from exercising its jurisdiction over those claims.

Furthermore, as a prudential matter, this Court declines to decide plaintiff's claims while her appeal is pending before the Connecticut Appellate Court.  Cf. Ankenbrandt, 504 U.S. at 704 (abstention inappropriate where "no state proceeding was pending nor any assertion of important state interests made.").  The Appellate Court has a strong interest in reviewing decisions of

17

its own lower courts, and plaintiff's attempt to seek
inconsistent results in the federal and state courts must fail.[2]

## IV.  Conclusion

Accordingly, defendant's motion to dismiss [Doc. # 10] is
GRANTED.  The Clerk is directed to close this case.


IT IS SO ORDERED.


_____/s/_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 15th day of June, 2005.**

---

[2]Because the Court concludes that jurisdiction is lacking on
other grounds, it does not address defendant's claim that the
amount in controversy fails to exceed the $75,000 threshold
required for diversity jurisdiction.